1  Dana L. Douglas, SBN 158548
2  James F. Rumm, SBN 224412
   Diana Lopez, SBN 267337
3  **DOUGLAS, LOPEZ & RUMM, LLP**
   333 S. Anita Drive, Suite 780
4  Orange, CA 92868
   Telephone: (714) 634-3800
5  Facsimile: (866) 927-0571

6
   Attorney for Plaintiffs
7  Brooke Fantelli (FKA Rodd James Fantelli)

8
                    UNITED STATES DISTRICT COURT
9
              FOR THE SOUTHERN DISTRICT OF CALIFORNIA
10

11

12  BROOKE FANTELLI,                  CASE NO:   **12CV0898 W JMA**
13                    Plaintiff,      **CIVIL COMPLAINT FOR DAMAGES**
14  vs.                               **FOR:**

15  BUREAU OF LAND                    **1. DEPRIVATION OF CIVIL RIGHTS**
16  MANAGEMENT, J. PETTER             **UNDER COLOR OF AUTHORITY (42**
                                      **USC 1983);**
17                    Defendants.     **2. BIVENS CLAIM (Pursuant to 42 USC**
                                      **1983, Bivens v. Six Unknown Agents of**
18                                    **the federal Bureau of Narcotics, 403 U.S.**
                                      **388 (1971), and 28 USC 2679(b)(2)).**
19

20                                    **DEMAND FOR JURY TRIAL**
21       BROOKE FANTELLI alleges as follows:

22                           **INTRODUCTION**

23       1.     Plaintiff Brooke Fantelli seeks judgment against Defendants the Bureau of Land

24  Management, J. Petter, and other unknown officers, for the Assault and Battery of Plaintiff

25  Brooke Fantelli as the result of the Bureau of Land Management's ranger, J. Petter intentionally

26  and improperly using a taser on Ms. Fantelli on or about October 22, 2011 in the desert in

27  California in an area called Ocotiel Wells, near State Road 2 (S-2) in the back of Split Mountain

28  Road.

                                       1

2.      Defendants, the Bureau of Land Management (hereinafter "BLM") and Ranger J. Petter (hereinafter "Ranger Petter" or "the ranger"), without legal cause or excuse, made an unreasonable seizure of the person of Brooke Fantelli (hereinafter "Ms. Fantelli" or "Plaintiff"), on or about October 22, 2011, violating her rights under the First, Fourth, Fifth, and Eighth Amendments to the United States Constitution, and subjected her to summary, cruel and unusual punishment when actions of Defendants resulted in the personal injury and emotional distress of Ms. Fantelli, and caused damages to Ms. Fantelli.

3.      This is an action for money damages brought pursuant to 42 U.S.C. sections 1981, 1983 and 1988, the First, Fourth, Fifth, and Eighth Amendments to the United States Constitution.

## JURISDICTION

4.      Plaintiff's claims for relief under Federal law arise under and violate the following laws:

    a.  Federal Civil Rights Act under 42 U.S.C. §§1981, 1983, 1985, 1986 and 1988;

    b.  the First Amendment of the United States Constitution (Freedom of Expression: includes the right to express one's sexual or gender identity (Transgendered Individual));

    c.  the Fourth Amendment of the United States Constitution;

    d.  the Equal Protection Clause and the Due Process Clause of the Fifth Amendment of the United States Constitution;

    e.  the Eighth Amendment of the United States Constitution; and

    f.  Bivens Claim, pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics 403 U.S. 388 (1971).

## THE PARTIES

5.      At all times herein mentioned, Plaintiff Brooke Fantelli is, and was, an individual residing in the State of California and has legal standing to maintain an action for Deprivation of Civil Rights under Color Of Law, Deprivation Of Civil Rights under Color of Law (Monell Claim), and a Bivens Claim, pursuant to 42 U.S.C. §§1981, 1983, 1985, 1986 and 1988, Monell

2

1   v. Department of Social Services 436 U.S. 658 (1978), the First, Fourth, Fifth, and Eighth

2   Amendments of the United States Constitution, and §42 USC 1983, Bivens v. Six Unknown

3   Agents of the federal Bureau of Narcotics 403 U.S. 388 (1971), and §28 USC 2679(b)(2)).

4         6.      Defendant BLM, is and was, at all times relevant to the matters alleged in this

5   complaint, a federal agency organized under the laws of the United States of America, and the

6   public employer of Ranger J. Petter.

7         7.      In addition to the facts alleged in the following paragraphs, Ranger Petter, who at

8   all times relevant herein, was an employee employed by the BLM. On information and belief,

9   Defendant Ranger J. Petter's badge number is 1453, and in doing the things herein alleged, is

10  sued in his individual and official capacity and acted within the course and scope of his

11  employment and under color of federal law, to wit, under color of statutes, ordinances,

12  regulations, policies, customs and usages of the United States.

13        8.      Plaintiff is informed and believes, and thereon alleges, that, at all times herein

14  mentioned, each of the defendants was the agent and/or employee and/or co-conspirator of each

15  of the remaining defendants, and in doing the things hereinafter alleged, was acting within the

16  scope of such agency, employment and/or conspiracy and with the permission and consent of the

17  other co-defendants.  The acts of each of the defendants were adopted by and ratified by the

18  remaining defendants.

19        9.      Defendants BLM and Ranger Petter encouraged, assisted, ratified and/or with

20  deliberate indifference failed to prevent any of the acts complained of herein and further created

21  the policies that led to Plaintiff's injury on or about October 22, 2011.

22                 **FACTS COMMON TO ALL COUNTS**

23        10.      Brooke Fantelli (FKA Rodd James Fantelli) owns an off-road racing products

24  business.

25        11.      Ms. Fantelli was at the above specified location for the purpose of photographing

26  models on or about October 22, 2011.

27        12.      During the course of the photo-shoot, Ranger J. Petter arrived at the scene.

28

**COMPLAINT FOR DAMAGES**

13.     When Ranger Petter arrived in his truck, he got out and demanded (as opposed to asked) to see everyone's Identification without reasonable suspicion or probable cause.

14.     Before Ranger Petter checked Ms. Fantelli's license, everything was fine and Ranger Petter appeared to be acting in a professional manner.

15.     Ms. Fantelli was formerly known as 'Rodd James Fantelli', and at the time, Ms. Fantelli was in the process of having a sex-change; because of that, Ms. Fantelli's driver's license still identified her as a man, as opposed to as a woman.

16.     When Ranger Petter saw Ms. Fantelli's driver's license, his entire demeanor changed.

17.     Ranger Petter then had a conversation with Ms. Fantelli primarily regarding the difference in her appearance (i.e. why Ms. Fantelli's ID showed a picture of a male).

18.     Ranger Petter immediately asked: "You used to be a man?" to which, Ms. Fantelli answered yes.

19.     When the ranger realized that Ms. Fantelli was transgendered, he became openly hostile and insulting to her.

20.     Ranger Petter then immediately demanded to search Ms. Fantelli's truck.

21.     Ranger Petter searched the truck, but when he found nothing illegal, he simply retreated to his vehicle.

22.     This search was conducted without any probable cause and without a warrant.

23.     Ranger Petter then proceeded to sit in his vehicle and watch Ms. Fantelli and the people present at the photo-shoot for approximately one hour.

24.     During that time, Ms. Fantelli and her acquaintance, Danny Sheets, stood near Ms. Fantelli's truck watching the photo-shoot, talking and having some beer.

25.     After the one hour of Ranger Petter watching them, Ms. Fantelli approached Ranger Petter and told him that he was making the models uneasy, so if he had no other business, that maybe he could move along.

26.     Ranger Petter quickly replied that he was not going to move along, in fact he stated that he was going to arrest Ms. Fantelli.

4

**COMPLAINT FOR DAMAGES**

27. When Ms. Fantelli inquired about the basis for Ranger Petter's intention to arrest her, Ranger Petter stated that he was going to arrest her for public drunkenness.

28. Although, Ms. Fantelli had consumed some beer that day she was not intoxicated and she was not driving or operating any vehicles at the time.

29. Prior to stating the intention to arrest Ms. Fantelli, Ranger Petter did not request that Ms. Fantelli take any test to detect her alcohol level.

30. Close in time to the point when Ranger Petter stated that he intended to arrest Ms. Fantelli, two sheriffs arrived at the scene.

31. Ranger Petter then ordered Ms. Fantelli to put her hands up and lie face down in the dirt.

32. Ms. Fantelli then raised her hands up into the air and asked Ranger Petter why she had to lay face down in the dirt.

33. Ms. Fantelli further stated that she was wearing a black top in the desert and was cooperating, and that there was no need to have her lie face down on the ground.

34. In response to Ms. Fantelli's request not to lay face down in the dirt, Ranger Petter discharged his taser at Ms. Fantelli.

35. The taser barbs hit Ms. Fantelli in her abdomen between her belly button and her breasts.

36. In response to being tasered, Ms. Fantelli lost control of her muscle function and fell to the ground.

37. While she was still lying on the ground and did not offer any resistance or provocation of any kind, Ranger Petter without any further warning, again discharged his taser against Ms. Fantelli.

38. The second taser discharge hit Ms. Fantelli in the crotch.

39. Ranger Petter tasered Ms. Fantelli twice despite the fact that she posed no immediate threat of harm to Ranger Petter or anyone else, and while Ms. Fantelli was entirely cooperating with all of Ranger Petter's orders.

40. There was no cause or basis for Ranger Petter to have tasered Ms. Fantelli at all.

5

**COMPLAINT FOR DAMAGES**

41.    The video recording of part of this incident, which shows the ranger tasering Ms. Fantelli when her hands are in the air, can be found on YouTube at the following web address: http://www.youtube.com/watch?v=zGJOkdEaO_k

42.    Ranger Petter then ripped one of taser barbs out of Ms. Fantelli, causing her to bleed.

43.    Ranger Petter's actions went against all taser training and policy, which mandates that the barbs be left in, to be removed by a medical professional.

44.    Ranger Petter thus removed the taser barbs in an improper manner that was intended to inflict pain and injury upon Ms. Fantelli.

45.    Ranger Petter's use of the taser also caused Ms. Fantelli's jeans to rip.

46.    Ranger Petter then handcuffed Ms. Fantelli and put Ms. Fantelli in the BLM's truck that Ranger Petter was driving.

47.    When putting Ms. Fantelli in the truck, Ranger Petter intentionally and violently elbowed her in the stomach.

48.    The elbowing was also entirely unnecessary because Ms. Fantelli was not resisting, was handcuffed, bleeding, and in pain from the wounds inflicted upon her by Ranger Petter.

49.    After Ranger Petter arrested Ms. Fantelli, she was taken to the hospital emergency room for the wounds inflicted upon her by the ranger.

50.    In the hospital, Ranger Petter continued to threaten and verbally abuse Ms. Fantelli.

51.    Later, Ranger Petter incarcerated Ms. Fantelli in jail for 23 hours with bail set at $25,000.

52.    Ranger Petter cited Ms. Fantelli with being drunk in public, resisting arrest, and making a terrorist threat.

53.    The alleged "terrorist threat" was supposedly made in the hospital and it involved Ms. Fantelli telling Ranger Petter that she was not going to just let this incident go without taking any action, which was a specific reference to 'lawful legal action'.

6

**COMPLAINT FOR DAMAGES**

54.     Ranger Petter claimed that this constituted a terrorist threat.

55.     On the date in question, there was someone present with Ms. Fantelli who actually was drunk: Danny Sheets, who had been standing directly next to Ms. Fantelli, was extremely drunk at the time, but Ranger Petter did not arrest, interrogate, attack or taser him.

56.     Ranger Petter's decision to arrest, assault, and batter Ms. Fantelli, but to ignore Mr. Sheets, shows that Ranger Petter's actions were intentionally discriminatory against Ms. Fantelli, based her status of being transgendered.

57.     The fact that Ranger Petter discharged his taser into Ms. Fantelli's crotch specifically rather than any other part of her body, also indicates from the circumstances, that Ranger Petter was intentionally harming her and discriminating against her as a result of her sexual/gender identity of being a transgendered individual.

58.     Plaintiff is informed and believes, and thereon alleges that the BLM has been engaging in unlawful enforcement procedures against Transgendered and Transsexual Individuals (hereinafter referred to as "Transgendered Individuals") in a discriminatory manner, which has led to the injury of multiple individuals in an over-arching, unwritten policy and procedure of the BLM to discriminate against Transgendered individuals and to cause fear in and deter people who are considering going through the process of expressing their internal sexual/gender identity.

59.     Plaintiff is informed and believes, and thereon alleges that the abovementioned policies and procedures of the BLM were made known to Ranger Petter.

60.     Plaintiff alleges that on or about October 22, 2011, in the abovementioned desert location in California, Ms. Fantelli was injured, falsely arrested, and unlawfully detained, under color of authority, and without probable cause or reasonable suspicion, by Defendants BLM and Ranger Petter.

61.     Plaintiff alleges that in the course of encountering, interacting with, detaining and arresting her, Defendant Ranger Petter unnecessarily and unjustifiably discharged his taser at Ms. Fantelli two times, one in her abdomen and one in her crotch, and further unnecessarily and unjustifiably elbowed her violently in her stomach.

**COMPLAINT FOR DAMAGES**

62.     Plaintiff alleges that this conduct was intentional, reckless, grossly negligent, wanton, willful and done without regard to and in violation of Plaintiff's Constitutional rights.

63.     Plaintiff alleges that on or about October 22, 2011, Defendant Ranger Petter, while so employed by Defendant BLM, and acting under color of law, detained, arrested, assaulted and battered and used excessive and improper force on Plaintiff in violation of her rights under the First, Fourth, Fifth, and Eighth Amendments of the United States Constitution.

64.     Plaintiff alleges that the force used by Defendant Petter was unjustified and excessive, because Ms. Fantelli was unarmed, had committed no crime (and defendants knew that plaintiff had committed no crime), was cooperating, and was not a threat to the safety of Ranger Petter or others.

65.     Plaintiff was sober and clear-headed at the time and place of this incident, and not intoxicated or drunk as claimed by defendants.

66.     As a direct and proximate result of the aforementioned acts of Defendants, and each of them, Plaintiff suffered the following injuries and damages for which Plaintiff may recover:

    a.   Violation of Ms. Fantelli's Constitutional Rights under the First, Fourth, Fifth, and Eighth Amendments to the United States Constitution to be free from an unreasonable search and seizure of her person and summary, cruel and unusual punishment;

    b.   Medical/Hospital Bills: from when Ms. Fantelli was in the hospital receiving treatment for the injuries caused by the ranger, including injuries to her abdomen and crotch, injuries from where the ranger elbowed her, injuries from where the handcuffs chaffed her skin, and from any other Medical/Hospital Bills she received which arose as a result of this incident.

    c.   Bail: Ms. Fantelli was required to post a bond of twenty five thousand ($25,000), which is still being retained;

    d.   Physical Pain and Suffering: as caused by the wounds inflicted upon Ms. Fantelli by the taser in her abdomen and crotch, and the pain and suffering from Ranger

1  Petter's elbowing of Ms. Fantelli in the stomach, and the pain and suffering of the

2  chaffing caused by the handcuffs.

3     e.  Emotional Distress: caused by Ranger Petter's conduct, the orders he gave, the

4  use of a taser, the elbowing he did, and the verbal harassment he engaged in while

5  she was in the hospital. Emotional Distress from the horror, humiliation, and fear

6  Ms. Fantelli suffered from being treated savagely and being discriminated against

7  by a government agent/officer just because she happens to be transgender. The

8  Emotional Distress that arose when Ranger Petter committed this brutal attack

9  against Ms. Fantelli, which has caused her to fear that other government agents

10  would engage in this same violent conduct against her. The emotional distress she

11  suffered from this brutal attack and Ms. Fantelli's knowledge that her pain,

12  humiliation, and fear were only inflicted on her because she was transgendered.

13     f.  Loss of Earnings and Loss of Earnings Capacity: resulting from Ms. Fantelli's

14  injuries and distress over the incident.  Ms. Fantelli could not work during the

15  time she was in the hospital for medical treatment and during her time at home

16  during recovery. Ms. Fantelli could not work when she was incarcerated and

17  when she was forced to hire an attorney to address the charges against her.  Ms.

18  Fantelli's earnings capacity is also diminished because she is terrified of

19  encountering further government agents/officers who could engage in the same

20  conduct as Ranger Petter. Ms. Fantelli is also fearful of going to the desert where

21  her business takes place because of the chance of encountering Ranger Petter and

22  other government officers that could engage in this same violent and

23  discriminatory conduct again.

24     g.  Property Damage: resulting from the taser ripping Ms. Fantelli's clothing.

25     h.  Attorney's Fees: as resulting from this incident.

26     i.  Court Costs: as resulting from this incident.

27     j.  Punitive Damages: as against Ranger Petter, as resulting from his outrageous and

28  intentionally violent and threatening conduct against Ms. Fantelli to deter future

**COMPLAINT FOR DAMAGES**

1     discriminatory and unnecessarily violent conduct by Ranger Petter and other

2     agents/officers of the BLM and other United States agencies.

3         67.     Defendant BLM is liable through the application of *respondeat superior* pursuant

4     to sections 28 USC 2679 and 42 USC 1983, for the acts of its employees/agents named herein

5     who at all times alleged herein were acting within the course and scope of their employment with

6     said public entities.

7                         **FIRST CLAIM FOR RELIEF**

8         (By Plaintiff Against All Defendants For **DEPRIVATION OF CIVIL RIGHTS UNDER**

9         **COLOR OF LAW** [42 USC §§1981, 1983, 1985, 1986 and 1988 under Federal Violation of

10                              Civil Rights])

11        68.     Plaintiff repeats and realleges each and every allegation of the foregoing

12    paragraphs 1 through 67 as though fully set forth hereinafter.

13        69.     This cause of action is to redress a deprivation, under color of authority, statute,

14    ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity

15    secured to Plaintiff by the First, Fourth, Fifth, and Eighth Amendments to the United States

16    Constitution.

17        70.     At all times mentioned herein, Defendant BLM employed the individual

18    defendants including Ranger Petter, herein. Defendant BLM provided their individual defendant

19    employees and agents with official badges and identification cards which designated and

20    described the bearers as employees of the BLM.

21        71.     During all times mentioned herein, the individual defendants, and each of them,

22    separately and in concert, acted under color and pretense of law, under color of the statutes,

23    ordinances, regulations, policies, practices, customs and usages of the United States. Each of the

24    individual defendants here, separately and in concert, deprived Plaintiff of the rights, privileges

25    and immunities secured to her by the First, Fourth, Fifth, and Eighth Amendments to the United

26    States Constitution and the laws of the United States.

27        72.     On or about October 22, 2011, defendants Ranger Petter and other unknown

28    officers forcibly detained and seriously injured Ms. Fantelli, as described above, all of which

                                        10

                         **COMPLAINT FOR DAMAGES**

constituted excessive, unjustifiable, and unreasonable force in violation of Plaintiff's right to be free from unreasonable searches and seizures, and her due process right to be free from arbitrary deprivations of liberty, property and the pursuit of happiness. The above referenced alleged conduct was done by Defendant Officers who acted grossly negligent, recklessly, wantonly, intentionally, willfully and deliberately indifferent to the constitutional rights of Plaintiff.

73.     At all times herein relevant, and prior thereto, Defendant BLM had a duty to:

a.   To train BLM officers to respect and protect the Federal constitutional and statutory rights of citizens, arrestees and detainees;

b.   To supervise BLM officers to assure that they do not use excessive force, and do not assault and batter citizens;

c.   To supervise BLM officers to assure that they respect and protect the Federal constitutional and statutory rights of citizens, arrestees and detainees;

d.   To not retain employment of BLM officers who have a propensity for violence and use of excessive force;

e.   To refrain from the use of restraint techniques that can pose an unreasonable risk of serious bodily injury, and constitute the use of unreasonable force;

f.   To train BLM officers to assure that they know the proper procedures for investigating criminal conduct;

g.   To train BLM officers to assure that officers know how to properly use a taser;

h.   To train BLM officers to assure that officers know when it is necessary to use force;

i.   To train BLM officers in how to correctly handle Transgendered Individuals;

j.   To act reasonably in its hiring of its officers to make sure its officers are competent and will obey the laws of the United States when carrying out their duties;

11

**COMPLAINT FOR DAMAGES**

k.  To act reasonably in its retention of its officers to make sure its officers continue to uphold the laws of the United States with respect to their official duties in their official capacities;

l.  To discipline its officers when it is found that those officers have failed to uphold the laws of the United States with respect to their official duties in their official capacities; and

m.  To discharge its officers when it is found that those officers have unreasonably failed to uphold the laws of the United States with respect to their official duties in their official capacities, regardless of whether those officers have been previously disciplined for such conduct.

74.  To the contrary, Defendant BLM has illustrated its grossly negligent, reckless, wanton, intentional, willful and deliberate indifference to the constitutional rights of Plaintiff Ms. Brooke Fantelli by the following:

a.  By failing, neglecting and refusing to train BLM officers to respect and protect the Federal constitutional and statutory rights of citizens, arrestees and detainees;

b.  By failing, neglecting and refusing to supervise BLM officers to assure that they do not use excessive force, and do not assault and batter citizens;

c.  By failing, neglecting and refusing to supervise BLM officers to assure that they respect and protect the Federal constitutional and statutory rights of citizens, arrestees and detainees;

d.  By failing, neglecting and refusing to terminate BLM officers who have a propensity for violence and who use excessive force;

e.  By instituting an unwritten policy that permits and encourages the use of excessive force against Transgendered Individuals to harm them in an attempt to discriminate and cause apprehension in Transgendered Individuals;

f.  By failing, neglecting and refusing to terminate BLM officers who have a propensity to discriminate unlawfully under the United States Constitution;

12

**COMPLAINT FOR DAMAGES**

g.   By failing, neglecting and refusing to train BLM officers to assure that they know the proper procedures for investigating criminal conduct;

h.   By failing, neglecting and refusing to train BLM officers to assure that officers know how to properly use a taser;

i.   By failing, neglecting and refusing to train BLM officers to assure that officers know when it is necessary to use force;

j.   By failing, neglecting and refusing to train BLM officers in how to correctly handle Transgendered Individuals;

k.   By failing, neglecting and refusing to act reasonably in its hiring of its officers to make sure its officers are competent and will obey the laws of the United States when carrying out their duties;

l.   By failing, neglecting and refusing to act reasonably in its retention of its officers to make sure its officers continue to uphold the laws of the United States with respect to their official duties in their official capacities;

m.   By failing, neglecting and refusing to discipline its officers when it is found that those officers have failed to uphold the laws of the United States with respect to their official duties in their official capacities; and

n.   By failing, neglecting and refusing to discharge its officers when it is found that those officers have unreasonably failed to uphold the laws of the United States with respect to their official duties in their official capacities, regardless of whether those officers have been previously disciplined for such conduct.

75.   The above acts or omissions of Defendant Officers were undertaken while under color of federal law and resulted in the violation of Plaintiff's constitutional rights, as stated herein. Likewise, the customs, practices, policies, and decisions of Defendants alleged herein and as applied to Plaintiff, resulted in violation of Plaintiff's constitutional rights.

76.   At all times herein mentioned, there was no need for the force utilized against Plaintiff. There was no crime committed by Plaintiff and Plaintiff was complying with all

13

**COMPLAINT FOR DAMAGES**

1    instructions of Ranger Petter. Plaintiff did not pose a threat to the safety of the Ranger Petter or

2    others and was not actively resisting arrest or attempting to evade arrest by flight.

3        77.    The above acts, omissions, customs, practices and/or decisions of the defendants,

4    and each of them, while carried out under color of law, have no justification or excuse in law,

5    and instead constitute a gross abuse of governmental authority and power, shock the conscience,

6    are fundamentally unfair, arbitrary, and oppressive, and unrelated to any activity in which

7    governmental officers may appropriately and legally undertake in the course of protecting

8    persons, property, or ensuring civil order.

9        78.    The above acts, omissions, decisions, customs, practices and/or policies were

10   consciously chosen from among various alternatives.

11       79.    Each of the individual defendants and the BLM acted in concert and without

12   authorization of law and each of the individual defendants, separately and in concert, acted

13   grossly negligent, recklessly, wantonly, willfully, knowingly, with reckless disregard and callous

14   indifference, and purposely with the intent to deprive Plaintiff of her rights and privileges, and

15   did in fact violate the aforementioned rights and privileges, entitling Plaintiff to exemplary and

16   punitive damages against the individual defendants in an amount to be proven at the trial of this

17   matter.

18       80.    As a direct, proximate result of the aforesaid acts, omissions, customs, practices,

19   policies and decisions of the defendants, and each of them, Plaintiff suffered and continues to

20   suffer from physical injuries, pain, suffering, and emotional suffering.

21       81.    Additionally, as a direct, proximate result of the aforesaid acts, omissions,

22   customs, practices, policies and decisions, Plaintiff was injured and emotionally distressed and

23   thus was unable to work at her usual occupation, thus having loss of earnings and loss of

24   earnings capacity.

25       82.    Plaintiff may maintain causes of action under 42 U.S.C. §1983 and recover

26   damages for the value of the Plaintiff's medical/hospital bills, bail, physical pain and suffering,

27   emotional distress, loss of earnings and loss of earning capacity, property damage, and punitive

28   damages.

**COMPLAINT FOR DAMAGES**

83.  At all times herein mentioned, Plaintiff is entitled to recover damages for her abovementioned injuries and damages, which Plaintiff alleges to be in excess of three dollars ($3,000,000.00).

84.  Additionally, Plaintiff has been forced to incur substantial amounts for attorneys fees, investigation expenses, and other expenses in the vindication of Plaintiff's constitutional rights. Plaintiff is thus entitled to and hereby demand costs, attorneys' fees and expenses pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**

(By Plaintiff against Defendant J. Petter and other unknown officers for a Bivens Claim (Pursuant to 42 USC 1983, Bivens v. Six Unknown Agents of the federal Bureau of Narcotics, 403 U.S. 388 (1971), and 28 USC 2679(b)(2))).

85.  Plaintiff repeats and realleges each and every allegation of the foregoing paragraphs 1 through 84 as though fully set forth hereinafter.

86.  On or about October 22, 2011, defendants, and each of them, acting within the course and scope of their employment with the BLM, forcefully detained Plaintiff and inflicted painful and unnecessary injuries upon her when she was tasered two times and was violently elbowed in the stomach even though Plaintiff neither resisted the defendants nor posed any threat to the defendants.

87.  Defendant Petter's and other unknown officers' conduct alleged above is a violation of the First, Fourth, Fifth, and Eighth Amendments of the United States Constitution.

88.  The First Amendment of the United States Constitution was violated by Defendant Petter and other unknown officers because they unlawfully limited Plaintiff's Freedom of Expression when they punished Plaintiff for expressing her Sexual/Gender Identity as a Transgendered Individual.

89.  The Fourth Amendment of the United States Constitution was violated when Defendant Petter and other unknown officers seized Plaintiff without an arrest warrant, without any probable cause and without reasonable suspicion of any criminal activity.

15

**COMPLAINT FOR DAMAGES**

90.     The Equal Protection Clause and the Due Process Clause of the Fifth Amendment of the United States Constitution was violated by Defendant Petter and other unknown officers, because these defendants treated Plaintiff differently when they physically injured and arrested her under the pretext of Public Drunkeness when really it was because they were intentionally treating her more poorly and violently because she was a Transgendered Individual, as proven by the difference in treatment of Danny Sheets who was not arrested for Public Drunkeness.

91.     The Eighth Amendment of the United States Constitution was violated by defendant Petter and other unknown officers, because Petter used his taser two times unnecessarily on Plaintiff and improperly ripped the taser barbs out of Plaintiff, which was done to inflict immense pain and injury on Plaintiff in addition to unnecessarily and violently elbowing Plaintiff in the stomach, and thus constituted cruel and unusual punishment.

92.     As a result of defendants' conduct, Plaintiff suffered physical injuries, pain and suffering, and property damage to her jeans which ripped when defendant Ranger Petter improperly used his taser on Plaintiff.

93.     Said harmful and offensive conduct, i.e. the tasering and elbowing of Plaintiff inflicted by defendants upon Plaintiff, was intentionally committed by defendants, and each of them, and was willful, wanton, malicious and oppressive thereby justifying the awarding of exemplary, or punitive, damages as to both Petter and other unknown officers, in an amount to be proven at trial.

94.     Moreover, as a legal, direct and proximate cause of the aforesaid conduct, Plaintiff incurred Medical/Hospital Bills, bail, attorney's fees, and court costs.

95.     Furthermore, as a legal, direct and proximate cause of the aforesaid conduct, Plaintiff suffered and continues to suffer pain from her physical injuries, emotional distress, loss of earnings and loss of earnings capacity, and property damage.

96.     Said Constitutional Amendments were not waived by Plaintiff, nor was the defendants' infliction of serious bodily injury upon Plaintiff privileged or immunized by the laws of the United States.

**COMPLAINT FOR DAMAGES**

97.     Each of the individual defendants and the BLM acted in concert and each of the individual defendants, separately and in concert, acted willfully, knowingly, with reckless disregard and callous indifference, and purposely with the intent to deprive Plaintiff of her rights and privileges, and did in fact violate the aforementioned rights and privileges, entitling Plaintiff to exemplary and punitive damages against the individual defendants Ranger Petter and other unknown officers in an amount to be proven at the trial of this matter.

98.     As a direct and proximate result of the aforementioned acts of Defendants, and each of them, Plaintiff Brooke Fantelli suffered the following injuries and damages, which Plaintiff alleges to be in excess of 3 million dollars ($3,000,000.00), for which Plaintiff may recover:

    a.    Medical/Hospital Bills;

    b.    Bail;

    c.    Pain and Suffering;

    d.    Emotional Distress;

    e.    Loss of Earnings and Loss of Earnings Capacity;

    f.    Property Damage;

    g.    Attorney's Fees; and

    h.    Court Costs.

**WHEREFORE**, Plaintiff prays for judgment against defendants as follows:

1.     General damages for violation of Brooke Fantelli's Constitutional Rights under the First, Fourth, Fifth, and Eighth Amendments to the United States Constitution for violation of freedom of expression, for violation of the right to be free from unreasonable search and seizure, and for violation of the right to equal protection, and for violation of the right to be free from cruel and unusual punishment, in the sum of $3,000,000.00;

2.     Economic damages for Medical/Hospital bills in an amount according to proof at the time of trial;

3.     Economic damages for Bail in the sum of $25,000.00;

**COMPLAINT FOR DAMAGES**

4.    General damages for physical pain and suffering and trauma during the incident of October 22, 2011, in an amount according to proof at the time of trial

5.    General damages for emotional trauma and distress during the incident of October 22, 2011, in an amount according to proof at the time of trial;

6.    Loss of Earnings and Loss of Earnings Capacity as resulting from her being injured and distressed because Ms. Fantelli could not work during the time she was in the hospital for medical treatment and during her time at home during recovery. In addition, Ms. Fantelli could not work when she was incarcerated and when she was forced to hire an attorney to address the charges against her. Ms. Fantelli's earnings capacity is also diminished because she is terrified of encountering further government agents/officers who could engage in the same conduct as Ranger Petter. Ms. Fantelli is also fearful of going to the desert where her business takes place because of the chance of encountering Ranger Petter or other government agents/officers that could engage in this same violent and discriminatory conduct again, according to proof at the time of trial;

7.    Property Damage as resulting from Ranger Petter's using the taser, which ripped Ms. Fantelli's clothes, in an amount according to proof at the time of trial;

8.    Attorney's Fees, investigation expenses, costs, and other expenses in the vindication of Plaintiff's Constitutional Rights under 42 U.S.C. §1988 as resulting from this incident, in an amount according to proof at the time of trial;

9.    Court Costs, as resulting from this incident;

10.   Punitive damages to punish and make an example of Ranger Petter and other unknown officers in an amount according to proof at the time of trial;

11.   For other general damages in an amount according the proof at trial;

12.   For other special damages in an amount according to proof at trial;

13.   For pre-judgment and post-judgment interest; and

/ / /

/ / /

**COMPLAINT FOR DAMAGES**

14.   For such other and further relief as the Court may deem just and proper;

Dated: March 10, 2012

**DOUGLAS, LOPEZ & RUMM, LLP**

By: _____
Dana Douglas
Attorneys for Plaintiff

19

**COMPLAINT FOR DAMAGES**

1

## DEMAND FOR JURY TRIAL

2    Plaintiff, Brooke Fantelli, hereby demands a trial by jury on all issues so triable.

3

4    Dated: March 10, 2012              **DOUGLAS, LOPEZ & RUMM, LLP**

5

6                      By: _____

7                           Dana Douglas
                           Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES**

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Brooke Fantelli

**DEFENDANTS**
United States Bureau of Land Management, and J. Petter, an individual

**(b)** County of Residence of First Listed Plaintiff  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Riverside
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Dana Douglas, Esq. Douglas, Lopez & Rumm, LLP
333 S. Anita Drive, Orange, CA 92868

Attorneys (If Known)

CLERK, U.S. DISTRICT
SOUTHERN DISTRICT OF CA

**12CV0898 W JMA**   BY FAX

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government
       Plaintiff

☐ 3  Federal Question
       (U.S. Government Not a Party)

☒ 2  U.S. Government
       Defendant

☐ 4  Diversity
       (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

|                                      | PTF | DEF |                                                      | PTF | DEF |
|--------------------------------------|-----|-----|------------------------------------------------------|-----|-----|
| Citizen of This State                | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State             | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                                       | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☒ 1  Original
       Proceeding

☐ 2  Removed from
       State Court

☐ 3  Remanded from
       Appellate Court

☐ 4  Reinstated or
       Reopened

☐ 5  Transferred from
       another district
       (specify)

☐ 6  Multidistrict
       Litigation

☐ 7  Appeal to District
       Judge from
       Magistrate
       Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 USC 1983 and 403 U.S. 388 (1971) and 28USC 2674(b)(2)
Brief description of cause:
Deprivation of Civil Rights under Color of Authority and BIVENS CLAIM

## VII. REQUESTED IN
## COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
    UNDER F.R.C.P. 23

DEMAND $
3,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
## IF ANY
(See instructions):       JUDGE                                    DOCKET NUMBER

DATE
04/11/2012

SIGNATURE OF ATTORNEY OF RECORD
*Dana Douglas*

**FOR OFFICE USE ONLY**

RECEIPT #  37529    AMOUNT  $350    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

MD 04/12/12

ORIGINAL

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS037549
Cashier ID: mbain
Transaction Date: 04/12/2012
Payer Name: DOUGLAS LOPEZ RUMM
------------------------------------
CIVIL FILING FEE
 For: FANTELLI V US BUREAU OF LAND
 Case/Party: D-CAS-3-12-CV-000898-001
 Amount:        $350.00
------------------------------------
CHECK
 Check/Money Order Num: 133713
 Amt Tendered:  $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $53.00
charged for any returned check.
```